UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------- X
                                           :

VIAHART, LLC,                                :

                                     :

                         Plaintiff,       :

                                     :

                 -against-              :

CREATIVE KIDS ONLINE, LLC, CREATIVE KIDS  :
FAR EAST, INC., CREATIVE KIDS ENTERPRISES, :
LLC, and CK ONLINE, LLC,                 :

                                     :

                          Defendants.     :

                                     :

--------------------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/18/22

1:20-cv-09943-GHW

<u>MEMORANDUM OPINION</u>
<u>& ORDER</u>

GREGORY H. WOODS, District Judge:

## I.     INTRODUCTION

      Viahart, LLC ("Plaintiff") is a designer and manufacturer of children's toys.  The defendants,

Creative Kids Online, LLC, Creative Kids Far East, Inc., Creative Kids Enterprises, LLC, and CK

Online, LLC (collectively, the "Defendants") are Plaintiff's competitors.  They produce and market a

similar toy involving interlocking plastic discs that teaches children construction and creative

thinking skills.  According to Plaintiff, its version of the toy, known as "Brain Flakes," has been a

widespread success.

      Plaintiff has been marketing its toy under the brand name "Brain Flakes" since 2014.

Plaintiff alleges that Defendants have infringed upon its intellectual property by marketing their toys

using similar product names and, in some instances, the "Brain Flakes" name itself.  Because

Plaintiff's mark and Defendants' marks as alleged look confusingly similar, Defendants' motion to

dismiss the First Amended Complaint (the "FAC") is denied.

## II.   BACKGROUND

### A.  Facts[1]

"Since 2010, [Plaintiff] has been engaged in the business of toy manufacturing and retail sales." FAC ¶ 11. Its "most famous branded product" is "BRAIN FLAKES," which Plaintiff "began manufacturing, marketing and selling in February 2014." *Id.* at ¶¶ 11, 12. Brain Flakes "is a high-quality interconnecting plastic disc manipulative construction toy . . . designed to help young children develop spatial, mathematic and creative thinking skills." *Id.* at ¶ 13. Since 2014, Plaintiff has "sold over 250,000 units or jars of BRAIN FLAKES branded products and has over 1500 positive Amazon reviews with 4.8 stars." *Id.* ¶ 13. Plaintiff "advertises, markets and distributes its BRAIN FLAKES toy products under federally registered trademarks with the United States Patent and Trademark Office ('USPTO') for both 'VIAHART' and 'BRAIN FLAKES.'" *Id.* ¶ 19, Ex. 2.



FAC, Ex. 10 – An Image of Plaintiff's Toy as It Appears on Amazon.

---

[1] The facts are drawn from the FAC, Dkt. No. 45, and are accepted as true for the purposes of this motion to dismiss. *See, e.g., Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff's Brain Flakes are advertised and sold on Amazon.  FAC, Ex. 10.  Plaintiff's product is described as a "stem toy" that is a "creative and educational alternative to building blocks."  *Id.*  Plaintiff has over 5,600 ratings on Amazon.  *Id.*  "Viahart" is listed as the seller of the "Brain Flakes" toy.  *Id.*  Plaintiff alleges that Brain Flakes have "gained significant goodwill and a strong reputation for high quality interconnecting plastic disc toy products in the marketplace."  *Id.* at ¶ 16.  The product has been "featured or mentioned by numerous media outlets, including Bloomberg, People magazine, Yahoo, Buzzfeed, Wall Street Journal and Chinese News sites."  *Id.* at ¶ 12.



FAC, Ex. 23 – Image of Plaintiff's Brain Flakes.

Plaintiff first discovered that Defendants were infringing on Plaintiff's trademark in 2018.  *Id.* at ¶ 24.  Plaintiff alleges that until 2018, Defendants used Plaintiff's trademarked name "Brain Flakes" in the title of their interlocking disc products.  *See* FAC, Exs. 3–6.  Defendants sold a "1400 Piece Megaset" of plastic discs called "Brain Flakes."  *Id.*  The "Brain Flakes" mark was prominently displayed on the Defendant's packaging.  FAC, Exs. 3, 7.



FAC, Ex. 13 – Image of an Allegedly Infringing Product Produced by Defendants.

Following the discovery of these allegedly infringing products, Plaintiff sent a letter to Creative Kids Far East, Inc. demanding that it "cease and desist from its infringing activity."  *Id.* After receiving Plaintiff's demand letter, Defendants stopped using the product name "Brain Flakes" and began advertising their interlocking disc products using the name, "Creative Kids Flakes," which Plaintiff alleges is confusing similar to "Brain Flakes."  FAC ¶ 24.  However, Defendants continued to use "Viahart's trademark, 'BRAIN FLAKES' as a search term or key term that has resulted in Amazon.com awarding [Defendants] with the Amazon Choice designation."  *Id.*  Defendants also

> included in its packaging label an image of a tree similar to Viahart's tree constructed with BRAIN FLAKES . . . [and] the notable image of a brain, which is clearly intended to relate to BRAIN FLAKES.  In some instances, [Defendants] used the BRAIN FLAKES trademark on the product packaging, while using 'Creative Kids Flakes' in the advertising text.

*Id.*; *see also* FAC, Exs. 8, 9, 13, 14.  Plaintiff alleges that Defendants used two marks that are alleged to be "Brain Flakes" and "Creative Kids Flakes."



FAC, Ex. 8 – Image of "Creative Kids Flakes" Sold Alongside an Image with a "Brain Flakes" Label.



FAC, Ex. 14 – Image Depicting the Creative Kids Flakes.

Defendants "knowingly sell, market and distribute" their interlocking disc products on Amazon, eBay, and their website.  *Id.* at ¶ 25.  They sell different sized interlocking disc sets than Plaintiff, including a much larger 1,400-piece set.  FAC, Ex. 9.  Plaintiff has never given Defendants a license or other permission to use its mark.  *Id.*

### B.  Procedural History

Plaintiff filed a lawsuit against 14 defendants in the United States District Court for the Eastern District of Texas in 2019.  *Id.* at ¶ 21.  Creative Kids Far East, Inc. was a defendant in that case but was dismissed without prejudice for lack of personal jurisdiction.  *Id.*  Plaintiff filed this

lawsuit on November 25, 2020 against Defendants and Playlearn USA, Inc. ("Playlearn").  Dkt. No. 1.  On March 2, 2021, Playlearn moved to dismiss Plaintiff's complaint.  Dkt. No. 42.  In response, Plaintiff filed the First Amended Complaint (the "FAC") on March 22, 2021.  Dkt. No. 45.  Playlearn and Defendants moved to dismiss the FAC.  Dkt. No. 50, ("Playlearn Mot."), Dkt. No. 52, ("Creative Kids Mot.").  Plaintiff filed memoranda of law in opposition to Playlearn's and Defendants' motions.  Dkt. No. 53 ("Creative Kids Opp'n"); Dkt. No. 54 ("Playlearn Opp'n").  Playlearn and Defendants filed reply briefs in further support of their motions.  Dkt. No. 55 ("Playlearn Reply"); Dkt. No. 56 ("Creative Kids Reply").

While the motions were pending, the Court held a status conference to discuss the motions to dismiss and to address the parties' ongoing discovery disputes.  Dkt. No. 68.  Following that conference, Plaintiff filed a notice of substitution of attorney.  Dkt. No. 77.  On December 9, 2021, Plaintiff's new counsel moved for leave to file a second amended complaint (the "Proposed SAC").  Dkt. No. 78.  Playlearn and Defendants filed responses in opposition to Plaintiff's motion on January 6, 2022.  Dkt. Nos. 84, 85.  Plaintiff filed reply briefs in further support of the motion for leave to amend on January 13, 2022.  Dkt. Nos. 86, 87.

On March 17, 2022, Plaintiff and Playlearn filed a stipulation of voluntary dismissal, dismissing Playlearn from this action with prejudice.  Dkt. Nos. 88, 89.

## III.   LEGAL STANDARD

A complaint need only contain "a short and plain statement . . . showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A defendant may move to dismiss a claim that does not meet this pleading standard for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  On a motion filed under Rule 12(b)(6), the court accepts as true the facts alleged in the complaint and draws all reasonable inferences in the plaintiff's favor.  *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam).  But "[t]hreadbare recitals of the

elements of a cause of action, supported by mere conclusory statements" are inadequate.  *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  And "[t]he tenet that a court must accept as true" a complaint's factual allegations does not apply "to legal conclusions."  *Id.*

To survive dismissal, a complaint must allege sufficient facts to state a plausible claim.  *Twombly*, 550 U.S. at 570.  A claim is plausible when the plaintiff pleads facts to support the reasonable inference that the defendant has acted unlawfully.  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  The plaintiff's claim must be more than merely "speculative."  *Twombly*, 550 U.S. at 545.  And a reviewing court must "draw on its judicial experience and common sense" to determine plausibility.  *Iqbal*, 556 U.S. at 679 (citation omitted).

On a motion to dismiss, a court must generally "limit itself to the facts stated in the complaint."  *Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 192 (2d Cir. 2006) (quoting *Hayden v. County of Nassau*, 180 F.3d 42, 54 (2d Cir.1999)).  But a court may consider "any 'written instrument' . . . attached to [the complaint] as 'an exhibit' or . . . incorporated in it by reference."  *Lynch v. City of New York*, 952 F.3d 67, 79 (2d Cir. 2020) (quoting Fed. R. Civ. P. 10(c) (other citations omitted)).

## IV.   DISCUSSION

### A.  Trademark Infringement and Unfair Competition Under the Lanham Act

Plaintiff has plausibly pleaded Lanham Act violations against Defendants.  Plaintiff's claims arise out of its federally registered trademark.  A trademark is "any word, name, symbol, or device . . . used by a person . . . to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods . . . ."  15 U.S.C. § 1127.  The trademark at issue here is for Plaintiff's product name, "Brain Flakes," which covers certain children's toys including "toys for developing fine motor skills and engineering skills; Construction toys; Stacking toys; Toy building blocks; Toy building blocks capable of

interconnection; Toy construction sets." FAC, Ex. 2. "The Mark consists of standard characters and without claim to any particular font style, size or color." *Id.*

"The Lanham Act was intended to make 'actionable the deceptive and misleading use of marks,' and 'to protect persons engaged in . . . commerce against unfair competition.'" *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 28 (2003) (citing 15 U.S.C. § 1127). The Lanham Act's trademark infringement provision creates a civil cause of action against,

> [a]ny person who shall, without the consent of the registrant[,] use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.

15 U.S.C. § 1114(1)(a). The Lanham Act's unfair competition provision creates a civil cause of action against,

> [a]ny person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . .

15 U.S.C. § 1125(a).

Plaintiff has adequately pleaded a likelihood of confusion as to Defendants' marks. "To prevail on a trademark infringement and unfair competition claim under 15 U.S.C. §§ 1114(1), 1125(a), in addition to demonstrating that the plaintiff's mark is protected, the plaintiff must prove that the defendant's use of the allegedly infringing mark would likely cause confusion as to the origin or sponsorship of the defendant's goods with plaintiff's goods." *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 114 (2d Cir. 2009). "A certificate of registration with the [Patent and Trademark Office] is *prima facie* evidence that the mark is registered and valid (*i.e.*, protectable), that the registrant owns the mark, and that the registrant has the exclusive right to use the mark in

commerce." *Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.*, 192 F.3d 337, 345 (2d Cir. 1999) (citing 15 U.S.C. § 1115(a)).

"The crucial issue in an action for trademark infringement is whether there is any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question." *Savin Corp. v. Savin Grp.*, 391 F.3d 439, 456 (2d Cir. 2004) (internal quotation marks omitted) (alterations in original).

> In determining whether there is a likelihood of confusion, we apply the eight-factor balancing test introduced in *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492 (2d Cir. 1961). The eight factors are: (1) strength of the trademark; (2) similarity of the marks; (3) proximity of the products and their competitiveness with one another; (4) evidence that the senior user may "bridge the gap" by developing a product for sale in the market of the alleged infringer's product; (5) evidence of actual consumer confusion; (6) evidence that the imitative mark was adopted in bad faith; (7) respective quality of the products; and (8) sophistication of consumers in the relevant market.

*Starbucks Corp.*, 588 F.3d at 115. "Our analysis is not mechanical, but rather, focuses on the ultimate question of whether, looking at the products in their totality, consumers are likely to be confused." *Star Indus., Inc. v. Bacardi & Co.*, 412 F.3d 373, 384 (2d Cir. 2005).

At the outset, the Court notes that the first element—the marks' validity and entitlement to protection—is not in dispute here. Plaintiff's mark for "Brain Flakes" is federally registered, and Defendants do not contest that the registration is valid and that the mark is entitled to protection. *See* FAC, Ex. 2. The question, then, is whether Plaintiff has adequately pleaded that Defendants' use of Plaintiff's mark is likely to cause confusion.

### i. *Strength of the Senior Mark*

Plaintiff has alleged that it has a strong mark. "The more unusual and distinctive a particular mark, the more likely the consumer will assume, upon seeing it essentially replicated, that the newly observed user is the same as, or affiliated with, the originally observed user." *Guthrie Healthcare Sys. v. ContextMedia, Inc.*, 826 F.3d 27, 41 (2d Cir. 2016). "[T]he strength factor is analyzed based on two components: '(1) the degree to which [the mark] is inherently distinctive; and (2) the degree to

which it is distinctive in the marketplace.'" *Car-Freshner Corp. v. Am. Covers, LLC*, 980 F.3d 314, 329 (2d Cir. 2020) (quoting *W.W.W. Pharmaceutical Co. v. Gillette Co.*, 984 F.2d 567, 572 (2d Cir. 1993)). "The strength of a mark is determined by its tendency to uniquely identify the source of the product. This tendency is strong to the extent that the mark is distinctive, either inherently or by virtue of having acquired secondary meaning." *Star Indus.*, 412 F.3d at 384.

"Acquired distinctiveness, sometimes called secondary meaning, is determined by analyzing six factors:  advertising expenditures, consumer studies linking the mark to a source, unsolicited media coverage of the product, sales success, attempts to plagiarize the mark, and the length and exclusivity of the mark's use." *Car-Freshner Corp.*, 980 F.3d at 329.

"Inherent distinctiveness is assessed on a continuum from least to most distinctive, with the aid of categories usually called (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful . . . ." *Id.*  "At the bottom of the ladder is the *generic* mark" which refers to the "'genus of which the particular product is a species.'" *Guthrie Healthcare Sys.*, 826 F.3d at 41 (quoting *Abercrombie and Fitch Co.*, 537 F.2d at 9–11).  Generic marks are not protectible because "[o]ne purveyor's use in commerce of a trademark consisting of the word that identifies what is sold under that mark 'cannot reasonably deprive competing manufacturers of the product of the right to call an article by its name.'"  *Id.*  "On the next rung up the ladder of strength is *descriptive* marks" which are protectible only if the mark "has acquired a 'secondary meaning,' in that it has 'become distinctive of the applicant's goods in commerce . . . .'"  *Id.* (quoting 15 U.S.C. § 1052(f)).  Such marks "command weak protection."  *Id.*  "The next rung up the ladder is for suggestive marks—those that communicate something about the product to which they relate, but by suggestion rather than description.  These are accorded somewhat stronger protection."  *Id.*  Finally, "the strongest protection goes to marks that are *arbitrary or fanciful*—marks that have no logical relationship to the

product or service for which they were used." *Id.* (quoting *Abercrombie & Fitch Co.*, 537 F.2d at 10–11).

       1.  <u>Acquired Distinctiveness</u>

Plaintiff has plausibly pleaded acquired distinctiveness.  At the outset, the Court notes that the FAC does not allege facts about Plaintiff's advertising expenditures or any consumer studies linking the mark to a source, two of the six factors relevant to an evaluation of acquired distinctiveness.  Despite these gaps in the FAC, the facts that Plaintiff has alleged relevant to the remaining factors are sufficient to plead a likelihood of confusion.  First, Plaintiff alleges that it has continually used its mark since at least November of 2013.  *See* FAC, Ex. 2.  Second, Plaintiff alleges that it has sold over "250,000" units.  FAC ¶ 13.  Plaintiff has therefore plausibly pleaded sales success.  Third, Plaintiff alleges that there has been extensive media coverage of the Brain Flakes product.  *See id.* at ¶ 12 ("Since Viahart began manufacturing, marketing and selling Viahart's BRAIN FLAKES branded product in February 2014, they have been featured or mentioned by numerous media outlets, including Bloomberg, People magazine, Yahoo, Buzzfeed, Wall Street Journal and Chinese News sites.").

And fourth, Plaintiff alleges that a number of companies have launched infringing product lines.  *Id.* at ¶ 21.  Plaintiff alleged that Playlearn used the mark "Brain Flakes" in its description of its own interlocking disc toy.  *See* FAC, Ex. 19.  Plaintiff also alleged that Defendants used the mark "Brain Flakes" in the advertising of their competing products.  *See* FAC, Ex. 13.  In at least one comment on Amazon, a representative of Defendants wrote that, "[w]e have intentionally designed *our brain flakes* to be thinner as many of the negative feedback we reviewed we're [sic] people complaining that VIAHART Brain Flakes is [sic] difficult for the kids to assembly [sic] and disassemble due to the thickness . . . ."  FAC, Ex. 6 (emphasis added).  Plaintiff has therefore alleged that there have been attempts to plagiarize its mark and that members of the consuming public

associate "Brain Flakes" with the product.  Taken together, Plaintiff has pleaded that "Brain Flakes" has acquired secondary meaning in the marketplace.

2.  <u>Inherent Distinctiveness</u>

Plaintiff has plausibly pleaded that its mark is inherently distinct.  Because the word "flake" is descriptive of the product itself, Plaintiff has not alleged that "Brain Flakes" is arbitrary or fanciful.  Using "flake" to describe plastic discs, the shape of which is evocative of snowflakes, does not "appl[y] the word in an unfamiliar way" nor does Plaintiff allege that the mark was "invented for its use" in this context.  *Lane Cap. Mgmt., Inc. v. Lane Cap. Mgmt., Inc.*, 192 F.3d 337, 344 (2d Cir. 1999).  On the other side of the inherent distinctiveness spectrum, the mark is also not alleged to be completely generic.  Though the word "flake," on its own, may be used to refer to small interconnecting pieces, the full mark is not "a common description" of interlocking disc toys nor does it refer "to the genus of which the particular product is a species."  *Id.*  Instead, Brain Flakes is either descriptive or suggestive.

"Descriptive" marks are those that describe the "product's features, qualities, or ingredients in ordinary language or describes the use to which the product is put."  *Id.*  Suggestive marks, by contrast, "suggest[] the features of the product, requiring the purchaser to use imagination, thought, and perception to reach a conclusion as to the nature of the goods."  *Id.*  Plaintiff has plausibly pleaded that its mark is suggestive.  The mark is suggestive of the product—interlocking discs evocative of snowflakes used by young children to develop creativity and engineering skills—but does not merely define the features or ingredients of the product.  Instead, a purchaser would use thought and imagination to understand what the mark is describing.

As pleaded, Plaintiff's mark is suggestive, and therefore inherently distinctive.  *See Gross v. Bare Escentuals Beauty, Inc.*, 641 F. Supp. 2d 175, 186 (S.D.N.Y. 2008) (finding that plaintiff's mark is "suggestive in nature" because the mark "could plausibly describe a wide variety of products" and is

therefore inherently distinctive).  The first factor, the strength of the mark, therefore, weighs in favor of Plaintiff.

### ii.    Similarity of the Marks

Plaintiff has also adequately pleaded similarity between its mark and the infringing marks. "The similarity of the marks is a key factor in determining likelihood of confusion.  'To apply this factor, courts must analyze the mark's overall impression on a consumer, considering the context in which the marks are displayed and the totality of factors that could cause confusion among prospective purchasers.'"  *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 117 (2d Cir. 2006) (quoting *Gruner + Jahr USA Pub., a Div. of Gruner + Jahr Printing & Pub. Co. v. Meredith Corp.*, 991 F.2d 1072 (2d Cir. 1993)) (internal citation omitted).  This factor should be assessed "'by reference to the marks in their entirety and not merely focusing on similar elements in marks which, taken as a whole, are not confusingly similar.'"  *Guthrie Healthcare Sys.*, 826 F.3d at 38–39.  "[T]he setting in which a designation is used affects its appearance and colors the impression conveyed by it.  Indeed, the 'impression' conveyed by the setting in which the mark is used is often of critical importance."  *Savin Corp.*, 391 F.3d at 458 (internal quotation marks omitted) (internal citation omitted).

This factor also weighs in favor of Plaintiff.  Although Plaintiff seems to conflate the two allegedly infringing marks, the Court must separately consider the similarity of each mark to Plaintiff's mark.  *See* Creative Kids Opp'n, at 5–6 (Plaintiff argues that Defendants "have used 'BRAIN FLAKES,' 'CREATIVE KIDS FLAKES,' along with other versions of the 'BRAIN FLAKES' trademark" in a confusingly similar way to Plaintiff's mark."); FAC ¶¶ 24, 25.  The Court will consider whether the overall impression of each mark, as alleged, is likely to cause confusion amongst prospective purchasers.  *Louis Vuitton*, 454 F.3d at 117.

1.  Brain Flakes

The Court's "consideration of similarity begins with the words of the marks." *Car-Freshner Corp.*, 980 F.3d at 330.  Plaintiff's mark is "BrainFlakes."  Defendants are alleged to have used the marks "Brain Flakes," "Young Hands Brain Flakes," and "Creative Kids Brain Flakes" as their product names.  FAC ¶ 16; FAC, Ex. 13.  The use of the words "brain" and "flakes" sequentially is, on its own, sufficient to allege a similarity of the marks.  As the Second Circuit recently noted, "[i]t is extremely unusual for the mark of a junior user to include two identical words of a senior user's mark in sequence." *Car-Freshner Corp.*, 980 F.3d at 330.  In rejecting a defendant's contention that the overall look of the packaging distinguished the products, the Second Circuit explained that "we have found no decision where differences in packaging dispelled the similarity of a mark that used two identical words, neither of which is descriptive of the products on which they appear, and the defendant put them, in sequence, in a mark placed on competitive products." *Id.* at 331.  The Court therefore need not evaluate the context of Defendants' use of the marks because Defendants' use of the words, "brain" and "flakes" in sequence on a competitive product is sufficient to allege similarity of the marks.  Therefore, this factor weighs in Plaintiff's favor.

2.  Creative Kids Flakes

In the context of the product's label and advertising, Plaintiff has also alleged a similarity between its mark and the "Creative Kids Flakes" mark.  Defendants are alleged to have used the mark "Creative Kids Flakes."  This mark and Plaintiff's mark therefore both include the word "flake." *See* Creative Kids Opp'n, at 5–6.  However, the "[u]se of one word, even from a senior user's arbitrary mark, whether singular or plural, is not so unusual, and does not inevitably lead to an infringement claimant's victory, even when the products compete in similar markets." *Car-Freshner Corp.*, 980 F.3d at 331 n.17.  The Court therefore considers, as alleged, "the mark's overall impression on a consumer, considering the context in which the marks are displayed and the totality

of factors that could cause confusion among prospective purchasers.'" *Louis Vuitton Malletier*, 454 F.3d at 117 (quoting *Gruner + Jahr USA*, 991 F.2d at 1078).

When evaluating the two competing marks, the Court first notes that there are several differences in the visual depiction of the marks on the product: the fonts are different; Defendants' label is blue and green, while Plaintiff's label is white; the pictures on the label depicting the interlocking discs are dissimilar; and Defendants' product is contained in a square plastic tub instead of a cylinder.

Plaintiff also alleges, however, that the overall impression of the two marks on Amazon adds to possible consumer confusion. Defendants have allegedly continued to use the phrase "Brain Flakes" in Amazon pictures depicting their products. *See* FAC, Ex. 8. Exhibit 8 shows that the product image for "Creative Kids Flakes" contains the phrase "Brain Flakes" and the logo is a picture of a brain with an interlocking plastic disc. *See* FAC Exs., 8 and 14. Plaintiff also alleges that the "Creative Kids Flakes" are populated on Amazon when a prospective buyer searches for "Brain Flakes." *See* FAC, Ex. 15. This adds to the likelihood that a prospective buyer would see "Creative Kids Flakes" and mistake it for "Brain Flakes." As alleged in Exhibits 8 and 16, consumers searching Amazon for "Brain Flakes," allegedly come across a product called "Creative Kids Flakes" that contains a picture of a brain and an interlocking disc on a plastic, transparent tub, containing colorful plastic discs. Plaintiff has therefore plausibly pleaded that the marks "could cause confusion among prospective purchasers." *Louis Vuitton Malletier*, 454 F.3d at 117 (internal quotation marks omitted).



FAC, Ex. 16 – Image Depicting Amazon Search Results for "Brain Flakes."

### iii.    *Proximity of the Products and their Competitiveness*

Plaintiff alleges that Defendants produce products in the same market as Plaintiff's Brain Flakes. Therefore, this factor weighs in Plaintiff's favor. The "pertinence" of this factor 'depends on the logical proposition that the public is less likely to draw an inference of relatedness from similar marks when the marks' users are in dissimilar areas of commerce . . . ." *Guthrie Healthcare Sys.*, 826 F.3d at 39. Plaintiff and Defendants produce interlocking, multi-colored plastic discs. The products are visually identical to one another and are all offered for sale on Amazon. *See* FAC ¶¶ 13, 25, 26; *see also* FAC Exs. 9–11. Plaintiff therefore alleges that the products are competitive with one another. This factor therefore also weighs in favor of Plaintiff.

### iv.    *Bridging the Gap*

Because Defendants operate in the same market as Plaintiff, this factor does not contribute to the analysis in either direction. "'Bridging the gap' refers to the likelihood that the senior user will enter the junior user's market in the future, or that consumers will perceive the senior user as likely to do so." *Star Indus.*, 412 F.3d at 387. This factor "becomes pertinent primarily when the junior user makes a credible case that there is little or no likelihood of consumer confusion because the senior user operates in a different field of enterprise or a different geographic area." *Guthrie*

*Healthcare Sys.*, 826 F.3d at 45.  When the junior user is already selling in the same market as the senior user, "there is no gap" and this factor has no bearing on the likelihood of confusion analysis. *Id.*  Because, as described above, Defendants' products are alleged to be in the same market as Plaintiff's Brain Flakes, this factor is not pertinent to the likelihood of confusion analysis. Therefore, this factor does not weigh in either Plaintiff's or Defendants' favor.

> ### v.    Sophistication of Purchasers

This factor does not weigh in either direction because Plaintiff has failed to allege anything about its customer base.  "The sophistication factor can have a significant bearing on likelihood of confusion." *Guthrie Healthcare Sys.*, 826 F.3d at 43.  When the customers or would-be-purchasers "have a high degree of familiarity and sophistication concerning the market in which the senior user operates, it may be obvious to them, notwithstanding similarity of trademarks, that a junior user's activities have no relationship to those of the senior user." *Id.*  On the other hand, when customers lack a sophisticated understanding of the market, "the likelihood is higher that similarity of trademarks may lead them to believe that a junior user's activities are affiliated with those of the senior user." *Id.*  Plaintiff does not allege anything in the FAC about the sophistication of consumers in the market and therefore the Court has insufficient information to evaluate this factor.

> ### vi.    Respective Quality of the Products

This factor also weighs in favor of Plaintiff.

> A marked difference in quality. . . tends to reduce the likelihood of confusion in the first instance, because buyers will be less likely to assume that the senior user whose product is high-quality will have produced the lesser-quality products of the junior user.  Conversely, where the junior user's products are of approximately the same quality as the senior user's, there is a greater likelihood of confusion . . . .

*Savin Corp.*, 391 F.3d at 461.  Plaintiff alleges that its product is "high quality," and that the infringing products are of inferior quality.  FAC ¶¶ 31, 10.  Specifically, Plaintiff alleges that Defendants' discs are "cheaper" and "thinner."  FAC, Ex. 5A.  After ordering Defendants' product online, some

consumers noted that it is of "inferior quality."  *See* FAC, Ex. 5 ("I purchased their 1400-count container to add-on to the previous two sets . . . .  When received, it was observed that the 1400-count container contains cheaper, thinner brain flakes as compared to the original toys."); FAC, Ex. 6 (in a comment on Amazon, a purchaser wrote that Defendants' product "appear[s] to be copy cat brain flakes, not the real ones produced by viahart.  They are thinner and cheaper than the viahart version (also called Brainflakes) and are not compatible.  Buyer beware!").

But while Plaintiff has alleged a difference in quality between the products, Plaintiff has not alleged that purchasers can tell the difference in quality when they make their purchasing decision.  As described above, the allegedly infringing products appear to be essentially identical to Plaintiff's discs when viewed on Amazon.  *See* FAC, Exs. 9–11.  The discs are all multi-colored and of similar size and shape.  The only notable difference appears to be the number of discs sold in a set.  Plaintiff has therefore alleged that customers cannot tell the difference in product quality at the point of sale.  As a result, although the products are alleged to be of different quality, the difference is not of the type that will reduce the likelihood of confusion by a purchaser.  This factor therefore weighs in favor of Plaintiff.

### vii.   *Actual Confusion*

Plaintiff has alleged actual confusion by a customer who purchased "Young Hands Brain Flakes" but intended to purchase Plaintiff's Brain Flakes.  "Instances of actual confusion resulting from a junior user's use of a mark similar to a senior user's can be powerful evidence supporting a likelihood of confusion."  *Guthrie Healthcare Sys.*, 826 F.3d at 44.  A customer purchased "Young Hand Brain Flakes" believing they were Plaintiff's "Brain Flakes."  The customer wrote on YouTube that he "loves" Plaintiff's product but that "the quality has drastically changed" and that the "new ones" he had recently purchased "did not work with the ones we purchased for xmas last year."  FAC, Ex. 3.  The writer of the post edited his comment after "reread[ing] the package of the new

brain flakes" he had purchased from Amazon. *Id.* "They are Young Hand Brain Flakes. This company is clearly producing an inferior product." *Id.*

Additionally, Plaintiff alleges that a customer filed a complaint with the Better Business Bureau (the "BBB") after purchasing a "1400-count container" of Brain Flakes. FAC, Ex. 5. Plaintiff responded to the BBB complaint stating that "we do not make a 1400 piece set" and that the purchaser likely bought the 1,400-piece set from a different company. FAC, Ex. 5A.

And finally, Plaintiff alleges that a Wall Street Journal writer confused one of Defendant's products with Plaintiff's "Brain Flakes." Plaintiff created an exhibit that juxtaposes a segment from a Wall Street Journal article with an image of the "Creative Kids Flakes" product page on Amazon. FAC, Ex. 4; FAC ¶ 11. The author of the article referred to a "1,400" piece set sold by Plaintiff. However, Plaintiff does not sell 1,400-piece sets; Defendants sell 1,400-piece sets. *Id.* at ¶ 24. Therefore, Plaintiff has adequately pleaded actual consumer confusion, and this factor weighs in favor of Plaintiff.

### viii.   *Bad Faith*

Plaintiff has adequately pleaded that Defendants acted in bad faith. This factor "'considers whether the defendant adopted its mark with the intention of capitalizing on [the] plaintiff's reputation and goodwill and [on] any confusion between his and the senior user's product.'" *Savin Corp.*, 391 F.3d at 460 (quoting *W.W.W. Pharm. Co.*, 984 F.2d at 575). The Second Circuit has noted that "[b]ad faith is not an essential element of a claim of infringement." *Guthrie Healthcare Sys.*, 826 F.3d at 44. Plaintiff alleges that Defendants intended to use Plaintiff's brand recognition to create consumer confusion in order to sell its own interlocking disc toys. As described above, Defendants used "Brain Flakes" in their product name. In response to customer reviews, Defendants describe the product as "our Brain Flakes" and concede that their toy was designed to mirror Plaintiff's. In one comment, a representative of Defendants wrote that, "[w]e have intentionally designed ***our***

*brain flakes* to be thinner as many of the negative feedback we reviewed we're [sic] people complaining that VIAHART Brain Flakes is [sic] difficult for the kids to assembly and disassemble due to the thickness . . . ." FAC, Ex. 6 (emphasis added). Reading these facts in the light most favorable to Plaintiff, Plaintiff has pleaded an intentional misappropriation of Plaintiff's mark and an intent to associate their mark with Plaintiff's. This factor also weighs in Plaintiff's favor.

### ix.    Balancing the Factors

Looking at the factors in combination, Plaintiff has adequately pleaded a likelihood of confusion. "In this case, as is often true, the factors that have the greatest pertinence are the degree of similarity between the two marks, and the proximity of Defendant's area of commerce to Plaintiff's." *Guthrie Healthcare Sys.*, 826 F.3d at 38. Plaintiff has pleaded a strong mark that is used in the same market as Defendants' allegedly infringing marks, which are confusingly similar to Plaintiff's mark. Plaintiff has also alleged bad faith and actual confusion between its product and Defendants' products. Therefore, the Court denies Defendants' motion to dismiss the Lanham Act claims brought against them.

### B. Trademark Infringement and Unfair Competition Under New York Law

For essentially the same reasons underlying the Lanham Act analysis, the Court denies Defendants' motion to dismiss Plaintiff's common law claims. "[U]nder New York state law, a mark owner may maintain a statutory or common law action against a party who engages in unauthorized use of the mark." *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 146 (2d Cir.), *certified question accepted*, 8 N.Y.3d 994, 870 N.E.2d 151 (2007), *and certified question answered*, 9 N.Y.3d 467, 880 N.E.2d 852 (2007) (quoting N.Y. Gen. Bus. Law § 360–k). Trademark infringement claims under New York law are analyzed under the same framework as the Lanham Act. *See Tiffany & Co.*, 971 F.3d at 92 n.13 ("[L]iability for trademark infringement under New York law mirrors liability under the Lanham Act . . . ."). New York law prohibits the "use, without the consent of the registrant, any reproduction,

counterfeit, copy, or colorable imitation of a mark registered under this article in connection with

the sale, distribution, offering for sale, or advertising of any goods or services on or in connection

with which such use is likely to cause confusion or mistake or to deceive as to the source of origin of

such goods or services[.]".   N.Y. Gen. Bus. Law § 360-k(a).   However, "[i]t is well established that

registration is not dispositive of the common-law rights of ownership of the trade-mark, but merely

grants the registrant the procedural advantage of establishing prima facie ownership."   *Norden Rest.*

*Corp. v. Sons of Revolution in State of N. Y.*, 51 N.Y.2d 518, 522 (1980); s*ee also ITC Ltd.*, 482 F.3d at 146

(citing *Norden Rest. Corp.* for the proposition that New York courts "acknowledge[e] common law

rights in unregistered marks.").

To plead common law trademark infringement, a Plaintiff must allege that the defendant's

mark is likely to cause confusion.   *See Allied Maint. Corp. v. Allied Mech. Trades, Inc.*, 42 N.Y.2d 538,

543 (1977) ("in an action for trade-mark infringement brought pursuant to either New York or

Federal law, it is necessary to show that the defendant's use of the trade-mark is likely to cause

confusion, mistake or to deceive[.]" (internal citations omitted)).   The plaintiff must allege "that the

public is likely to confuse the defendant's product or service with that of the plaintiff."   *Id.*   Because,

as described above, Plaintiff has adequately pleaded a likelihood of confusion between its mark and

the infringing marks, the Court denies Defendants' motion to dismiss Plaintiff's New York common

law infringement claim.

Under New York law, "'common law unfair competition claims closely resemble Lanham

Act claims except insofar as the state law claim may require an additional element of bad faith or

intent.'"   *Genesee Brewing Co. v. Stroh Brewing Co.*, 124 F.3d 137, 149 (2d Cir. 1997) (quoting *Girl Scouts*

*v. Bantam Doubleday Dell Publishing Group, Inc.*, 808 F. Supp. 1112, 1131 (S.D.N.Y. 1992), *aff'd*, 996

F.2d 1477 (2d Cir. 1993)).   "Under New York common law, the essence of unfair competition is 'the

bad faith misappropriation of the labors and expenditures of another, likely to cause confusion or to

deceive purchasers as to the origin of the goods.'" *Forschner Grp., Inc. v. Arrow Trading Co.*, 124 F.3d 402, 408 (2d Cir. 1997) (quoting *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 34 (2d Cir. 1995)); *see also E.A. Sween Co., Inc. v. A & M Deli Express Inc.*, 787 F. App'x 780, 783 (2d Cir. 2019) (Under New York common law, "[a]s under the Lanham Act, 'the plaintiff must show either actual confusion in an action for damages or a likelihood of confusion for equitable relief,' as well as bad faith." (quoting *Jeffrey Milstein, Inc.*, 58 F.3d at 35)). "[T]o prevail on a claim for unfair competition under New York common law, the plaintiffs must combine their 'evidence supporting liability under the Lanham Act with additional evidence demonstrating that defendants acted in bad faith.'" *Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*, 331 F. Supp. 3d 221, 250 (S.D.N.Y. 2018) (quoting *Lorillard Tobacco Co. v. Jamelis Grocery, Inc.*, 378 F. Supp. 2d 448, 456 (S.D.N.Y. 2005)).

As explained above, Plaintiff has pleaded that its mark is entitled to protection and that there is a likelihood of confusion as to Defendants' infringing marks. In addition, and as above, Plaintiff has also adequately pleaded that Defendants acted in bad faith in misappropriating Plaintiff's mark for use in their own advertising and marketing. Defendants referred to their product line as "our brain flakes" in Amazon comments. FAC, Ex. 6. Plaintiff also alleges that Defendants continued to advertise their product with pictures depicting the "Brain Flakes" trademark even after Plaintiff sent Defendants a cease-and-desist letter. FAC ¶ 24; FAC, Ex. 8. Therefore, the Court denies Defendants' motion to dismiss Plaintiff's common law unfair competition claim.

## V.    CONCLUSION

Defendants' motion to dismiss is therefore denied.  The Clerk of Court is directed to terminate the motion pending at Dkt. No. 52.

SO ORDERED.

Dated:  March 18, 2022
        New York, New York

GREGORY H. WOODS
United States District Judge