UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X

VIAHART, LLC,

                        Plaintiff,

               -v-

CREATIVE KIDS ONLINE, LLC, *et al.*,

                     Defendants.

------------------------------------------------------------------ X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  10/1/2025
```

1:20-cv-9943-GHW

MEMORANDUM
OPINION & ORDER

GREGORY H. WOODS, United States District Judge:

Viahart, LLC ("Plaintiff") is a designer and manufacturer of children's toys. One of its products is sold under the name "Brain Flakes," which Plaintiff has trademarked. The defendants, Creative Kids Online, LLC, Creative Kids Far East, Inc., Creative Kids Enterprises, LLC, and CK Online, LLC (collectively, the "Defendants") are Plaintiff's competitors. Plaintiff alleges, among other things, that Defendants have violated its trademark by selling a similar toy using the "Brain Flakes" trademark or confusingly similar marks.

The parties engaged in an extended period of discovery. During discovery, Plaintiff moved to compel Defendants to produce several categories of documents. The Court granted that request and ordered Defendants to produce them.

Ahead of trial, Plaintiff filed a motion *in limine* for sanctions pursuant to Rule 37(b)(2)(A) of the Federal Rules of Civil Procedure as a result of Defendants' failure to comply with the Court's order compelling the production of discovery. The Court granted Plaintiff's motion and sanctioned Defendants for their unexplained failure to make the required productions for nearly two years. The Court ordered Defendants to pay Plaintiff's reasonable attorney's fees and costs attributable to Plaintiff's briefing of the relevant motion *in limine* and its initial efforts to compel the production of those materials. Accordingly, Plaintiff's counsel gathered billing records related to the sanctioned

conduct and submitted a request for $24,730.88 in fees. However, because Plaintiff's multiple changes of counsel and use of improper block billing made the request excessive, the Court reduces Plaintiff's request by ten percent and awards $22,257.79 in fees.

## I.    Background[1]

In this suit, Plaintiff asserts, among other things, that Defendants have violated its trademark by selling a similar toy using the "Brain Flakes" trademark or confusingly similar marks. Dkt. No. 112 (second amended complaint). During discovery, Plaintiff complained that Defendants failed to provide complete answers to a number of discovery requests. On July 14, 2022, Plaintiff sought to compel a more complete response from Defendants to Plaintiff's discovery requests. Dkt. No. 113. The Court held a conference to discuss the motion on July 18, 2022. During that conference, the Court overruled Defendants' objections to Plaintiff's discovery requests and ordered that Defendants produce several categories of documents. Dkt. No. 117.

Ahead of trial, Plaintiff filed several motions *in limine*. One motion was for sanctions pursuant to Rule 37(b)(2)(A) of the Federal Rules of Civil Procedure as a result of Defendants' failure to comply with the Court's July 18, 2022 order compelling the production of discovery materials. Dkt. No. 213. After reviewing the parties' written submissions, the Court granted Plaintiff's motion and sanctioned Defendants. Dkt. No. 278 ("Tr."). One of the sanctions that the Court imposed was an order that Defendants pay Plaintiff's reasonable expenses incurred to litigate the motion to compel. The Court concluded that Plaintiff was entitled to reasonable attorney's fees and costs attributable to the briefing of the motion *in limine* required as a result of Defendant's

---

[1] A detailed description of the facts of this case are provided in the Court's prior opinion, *Viahart, LLC v. Creative Kids Online, LLC*, 2025 WL 638606, at *2 (S.D.N.Y. Feb. 27, 2025). The Court therefore assumes familiarity with them and presents only a truncated version of the relevant events.

failure to produce documents, as well as Plaintiff's efforts to compel the production of those materials.  Tr. at 51:6-52-16.

Plaintiff initially filed a motion for attorney's fees on June 24, 2024.  Dkt. No. 269.  On July 2, 2024, one of the Defendants notified the Court that it had filed for bankruptcy protection.  Dkt. No. 275.  As a result of the application of the automatic stay, the Court stayed the case in its entirety.  Dkt. No. 277.  Just over five months later, on December 6, 2024, the Court was notified that the automatic stay had been lifted.  Dkt. No. 280.

On February 27, 2025, the Court ruled on Plaintiff's June 24, 2024 motion for attorney's fees.  The Court concluded that Plaintiff's application did not include sufficient information to evaluate the reasonableness of his request.  *See* Dkt. No. 296; *see also Viahart, LLC v. Creative Kids Online, LLC*, 2025 WL 638606 (S.D.N.Y. Feb. 27, 2025).  The Court found that Plaintiff "failed to provide any information relating to the credentials of the professionals who billed time to the case." *Viahart, LLC*, 2025 WL 638606, at *5.  Plaintiff had also requested reimbursement for legal fees that were "not directly related to the discovery abuses that led to the Court's sanction." *Id.*  In addition, the Court wrote that it "[could] not ascertain how Plaintiff has calculated the requested fee award, in large part because of the pervasive use of block billing in the invoices presented in support of the motion." *Id.*  Accordingly, the Court denied the motion for attorney's fees without prejudice.  *See id.* at *1, *6.

On March 28, 2025, Plaintiff filed a renewed motion for attorney's fees.  *See* Dkt. No. 302 ("Mem.").  Plaintiff's counsel, James H. Creedon, filed a declaration in support of the motion. Dkt. No. 302-1 ("Creedon Decl.").  This time, he submitted the credentials of each attorney who billed time in the matter.  Creedon Decl. at 40–67.  He also submitted billing records from lawyers

3

from the four law firms involved with the motion to compel and the motion *in limine*.[2] *Id.* ¶ 6; *see also id.* at 4–39.

However, as with his first request, many of the time entries were block billed, with a single time entry describing several distinct tasks. Accordingly, before submitting his motion, Mr. Creedon reviewed the bills to determine what percentage of time in each entry related to work on the sanctioned conduct. *Id.* ¶ 5. For example, Mr. Creedon solicited feedback from the billing attorneys employed at his law firms[3] to determine how much work within each time entry fell within the scope of the Court's order. *Id.* ¶ 6. Otherwise, Mr. Creedon reviewed "the relevant filings and docket entries," and "the case files and attorney work product." Based on that review and his knowledge of the case, he determined how much of each entry related to the relevant motions. *Id.*

Based on this evaluation, Mr. Creedon determined how much time, if any, should be attributed to the sanctioned conduct and reduced each entry accordingly. *Id.* In most cases, Mr. Creedon requested either twenty-five percent or fifty-percent of the time billed. Mr. Creedon then certified that he reduced his request so that his fee only captured work related to the sanctioned conduct. *Id.* ¶¶ 5–6, 8. Plaintiff ultimately requested $24,730.88 in fees, a substantial reduction from the original request of $77,366.50. *Id.* ¶ 7; *see* Dkt. No. 269 at 1. Mr. Creedon confirmed that "all claimed invoices have been fully paid by Viahart LLC." Creedon Decl. ¶ 4.

On April 28, 2025, Defendants filed an opposition. Dkt. No. 308 ("Opp."). Defendants argued that the Court should deny the application because Plaintiff did not submit sufficient information concerning the credentials or experience of the billing lawyers. *See* Opp. at ECF

---

[2] Based on the Court's review of the bills, it appears that Plaintiff was represented first by Ms. Mills at WB Mills, PLLC until November 2021. Creedon Decl. at 12. That same month, Mr. Tobin and Mr. Susser at Carlson, Gaskey & Olds took over. *Id.* at 14. In September 2022, Mr. Creedon, Mr. Cowart, and Mr. Wallace of Creedon PLLC began working on the case. *Id* at 19–22. Later, in April 2024, Bell Nunnally and Scale LLP stepped in as counsel. *See id.* at 24–27, 29–32. At Bell Nunnally, Mr. Cowart and Mr. Lowenstein staffed the case. *See id.* At Scale LLP, Ms. Wells, Mr. Creedon, and Mr. Wallace worked on the matter. *See id.* Plaintiff submitted bills from each firm.

[3] Mr. Creedon worked at Scale LLP and Creedon PLLC. Creedon Decl. at 1.

4

page 3.[4]  They also argued that Plaintiff did not properly account for what Defendants perceived as a lack of complexity related to "addressing a party's failure to provide discovery."  *Id.* at ECF page 4. Finally, Defendants contended that Mr. Creedon's method of determining the relevant percentage of time in each billable block was "conclusory" and unsupported by individual affidavits from each billing attorney.  *Id.* at ECF 3, 5.

## II.    Legal Standard

"As with the award of statutory attorneys' fees to a party that prevails on the merits, an award of fees as a sanction for discovery abuse begins with a lodestar analysis."  *Rahman v. The Smith & Wollensky Rest. Grp., Inc.*, 2008 WL 1899938, at \*2 (S.D.N.Y. Apr. 29, 2008).  The lodestar—"the product of a reasonable hourly rate and the reasonable number of hours required by the case— creates a 'presumptively reasonable fee.'"  *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008)).  While presumptively reasonable, the lodestar is not "conclusive in all circumstances." *Id.* at 167 (quoting *Perdue v. Kenny A. ex rel Winn*, 559 U.S. 542, 553 (2010)).  A district court "may adjust the lodestar when it does not adequately take into account a factor that may properly be considered in determining a reasonable fee.  However, such adjustments are appropriate only in rare circumstances, because the lodestar figure [already] includes most, if not all, of the relevant factors constituting a reasonable attorney's fee."  *Id.* (alteration in original) (internal quotations and citations omitted).

Second Circuit precedent requires a party seeking an award of attorneys' fees to support its request with contemporaneous time records that show "for each attorney, the date, the hours expended, and the nature of the work done."  *N.Y. State Ass'n for Retarded Child, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983).  District courts have "considerable discretion" in determining what

---

[4] Every page of Defendants' opposition was paginated as page eight.

constitutes a reasonable award of attorneys' fees. *Arbor Hill*, 522 F.3d at 190. The Second Circuit has directed that district "courts should generally use the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee." *Restivo v. Hessemann*, 846 F.3d 547, 590 (2d Cir. 2017) (quoting *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009)). Those hourly rates "are the market rates 'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998) (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)).

In determining a reasonable hourly fee, the Second Circuit has also instructed district courts to consider "*all* of the case-specific variables." *Arbor Hill*, 522 F.3d at 190 (emphasis in original). The touchstone inquiry is "what a reasonable, paying client would be willing to pay . . . ." *Id.* at 184; *see id.* at 192 ("By asking what a reasonable, paying client would do, a district court best approximates the workings of today's market for legal services."). The court should "bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively" and "should also consider that [a client] might be able to negotiate with his or her attorneys. . . ." *Id.* at 190. A district court may additionally factor into its determination "the difficulty of the questions involved[,] the skill required to handle the problem[,] the time and labor required[,] the lawyer's experience, ability and reputation[,] the customary fee charged by the Bar for similar services[,] and the amount involved." *OZ Mgmt. LP v. Ozdeal Inv. Consultants, Inc.*, 2010 WL 5538552, at *2 (S.D.N.Y. Dec. 6, 2010) (alterations in original) (quoting *F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1263 (2d Cir. 1987)), *report and recommendation adopted*, 2011 WL 43459 (S.D.N.Y. Jan. 5, 2011).

"The district court retains discretion to determine . . . what constitutes a reasonable fee." *Millea*, 658 F.3d at 166 (ellipsis in original) (quoting *LeBlanc–Sternberg v. Fletcher*, 143 F.3d 748, 758 (2d Cir. 1998)). "However, this discretion is not unfettered," and "the district court must abide by the

procedural requirements for calculating those fees articulated by [the Second Circuit] and the Supreme Court." *Id.* "Attorney's fees must be reasonable in terms of the circumstances of the particular case . . . ." *Alderman v. Pan Am World Airways*, 169 F.3d 99, 102 (2d Cir. 1999).

## III.    Discussion

### A.    Reasonable Rates

The hourly rates billed by Plaintiff's counsel were reasonable. For context, six partners at four firms worked on the relevant motion *in limine* and efforts to compel discovery. Those partners were: James Creedon and Jamie Wells of Scale LLP; Jeffrey Lowenstein of Bell Nunnally; Brian S. Tobin and Steven Susser of Carlson, Gaskey & Olds, P.C.; and Wendy Mills of WB Mills, PLLC. Charles Wallace, counsel at Scale LLP, and Christian Cowart, senior counsel at Bell Nunnally, also worked on the case. To determine whether Plaintiff's rates were reasonable, the Court begins by comparing Plaintiff's counsel's hourly rates to those charged by attorneys in this district with commensurate experience for similar work. *See Gierlinger*, 160 F.3d at 882 (quoting *Blum*, 465 U.S. at 896 n.11) (explaining that courts evaluating the reasonableness of a fee should look to "the market rates 'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation'").

Here, each of the partners billed at reasonable hourly rates that are in line with market rates. "[C]ourts in this district have generally found hourly rates of $400 to roughly $750 to be appropriate for partners in copyright and intellectual property cases." *See Latin Am. Music Co., Inc. v. Spanish Broad. Sys., Inc.*, 2020 WL 2848232, at *6 (S.D.N.Y. June 1, 2020) (Sullivan, J.); *River Light V, L.P. v. Lin & J Int'l, Inc.*, 2015 WL 3916271, at *11 (S.D.N.Y. June 25, 2015) (finding hourly fee of $725 to be reasonable for experienced partners in intellectual property case despite being "somewhat higher than the norm" in 2015); *Filo Promotions, Inc. v. Bathtub Gins, Inc.*, 311 F. Supp. 3d 645, 649 (S.D.N.Y.

2018) (holding that $610 per hour was a reasonable rate for a partner who had been litigating intellectual property disputes for nearly thirty years).

Here, Mr. Creedon, Ms. Wells, Mr. Susser, Mr. Tobin, and Ms. Mills each billed at hourly rates between $350 to $700 an hour, which fall within the range of acceptable billing rates for experienced partners litigating intellectual property matters in this district. Mr. Creedon, a Deputy Managing Partner at Scale LLP with at least a decade of experience specializing in intellectual property matters, billed at a rate of $700 per hour. *See* Creedon Decl. at 2, 40–44. Ms. Wells, a Partner at Scale LLP, billed $675 per hour. *See id.* at 2, 65-67. Ms. Wells litigates in the firm's financial services department and handles intellectual property infringement and trademark disputes. *Id.* Mr. Tobin, a shareholder at Carlson, Gaskey & Olds, P.C. with more than two decades of experience litigating patent and trademark disputes, billed at a rate of $390 per hour. *Id.* at 2, 58-59. Mr. Susser, a shareholder at Carlson, Gaskey & Olds, P.C. who also has more than two decades of experience litigating intellectual property matters, charged $440 per hour. *Id.* at 2, 56-57. Finally, Ms. Mills charged $350 per hour. *See id.* at 2. Ms. Mills is the managing attorney at WB Mills, PLLC and has substantial experience working on intellectual property litigation. *Id.* at 54-55. Accordingly, Mr. Creedon, Ms. Wells, Mr. Susser, Mr. Tobin, and Ms. Mills each billed at reasonable hourly rates.

Mr. Lowenstein's rate of $815 an hour, although slightly high, is also reasonable. Creedon Decl. at 2, 49–53. As noted above, as of 2020, a rate of $750 was "appropriate for partners in copyright and intellectual property cases." *See Latin Am. Music Co., Inc.*, 2020 WL 2848232, at *6. But that was five years ago, and there is a "need to increase rates over time to keep up with the local legal industry." *Alvarez v. Fine Craftsman Grp.*, LLC, 2024 WL 3730569, at *4 (S.D.N.Y. Aug. 6, 2024) (quoting *Martinenko v. 212 Steakhouse, Inc.*, 2023 WL 2919559 (S.D.N.Y. Apr. 12, 2023)). Mr. Lowenstein is a seasoned partner at Bell Nunnally. *See* Creedon Decl. at 49–53. He specializes in intellectual property, real property, and complex business litigation. Given his experience and in

light of the need to keep pace with the increase in rates over time, Mr. Lowenstein's rate is reasonable.

The rates billed by Mr. Cowart and Mr. Wallace, although slightly high, are also reasonable. In some cases, counsel with substantial experience have been awarded rates similar to those of partners. *See, e.g.*, *Cawthon v. Lishuang*, 2024 WL 3813879, at *12 (S.D.N.Y. July 19, 2024), *report and recommendation adopted*, 2024 WL 4200389 (S.D.N.Y. Sept. 16, 2024) (awarding $570 an hour to a highly experienced of-counsel); *see also BMaddox Enters. LLC v. Oskouie*, 2023 WL 1418049, at *4 (S.D.N.Y. Jan. 6, 2023) (finding $500 a reasonable hourly rate for attorneys with more than ten years of copyright experience). Here, Mr. Wallace, who serves as counsel at Scale LLP and has been practicing for at least seven years, charged $625 per hour. Mr. Wallace has expertise in intellectual property litigation, and trademark and copyright cases. *See* Creedon Decl. at 62. Additionally, Mr. Cowart is senior counsel at Bell Nunnally. He has at least eight years of experience and his practice focuses on intellectual property cases, too. He billed at $535 an hour at Bell Nunnally. Mr. Cowart also previously worked at Creedon PLLC, where his rate was far lower at $365 an hour. *See* Creedon Decl. at 2, 45-48. Overall, when compared to rates in the community awarded for similar services by lawyers of reasonably comparable skill, experience, and reputation, Plaintiff's counsels' requested rates are reasonable.

A consideration of the other relevant factors supports this conclusion. *See OZ Mgmt. LP v. Ozdeal Inv. Consultants, Inc.*, 2010 WL 5538552, at *2 (explaining that other factors a court may consider when determining a reasonable rate include "the difficulty of the questions involved[,] the skill required to handle the problem[, and] the time and labor required[.]"). It is true that, on the one hand, a motion to compel and motion for sanctions did not involve novel issues that are particularly difficult. But it was necessary here. The Court does not find it appropriate to reduce Plaintiff's fees because they were required to litigate a meat and potatoes issue.

Additionally, as noted above, the touchstone inquiry is "what a reasonable, paying client would be willing to pay." *Arbor Hill,* 522 F.3d at 184. Here, Viahart was willing to and did pay the requested rates. *See* Creedon Decl. ¶ 4. That a reasonable, paying client paid the requested rates confirms that the fee is reasonable, particularly because the rate paid by a reasonable client "best approximates the workings of today's market for legal services." *Arbor Hill,* 522 F.3d at 192. On balance, after a consideration of "all of the case-specific variables," including the lawyers' experience, the comparable hourly rates charged by attorneys in this district for similar work, and the rate "a reasonable, paying client would be willing to pay," *Arbor Hill*, 522 F.3d at 184, 190, the Court finds that each of the requested hourly rates are reasonable.

### B.    Reasonable Number of Hours

Although Plaintiff's request for compensation for 53 hours is more reasonable than his initial request, the Court reduces the fee request by ten percent to account for inefficient staffing, and because Plaintiff's counsel's use of imprecise descriptions and block billing impaired the Court's ability to properly "allocate time to individual activities in order to gauge the reasonableness of time expended on each activity." *Ass'n of Holocaust Victims for Restitution of Artwork & Masterpieces*, 2005 WL 3099592, at *5 (S.D.N.Y. Nov. 17. 2005); *see Latin Am. Music Co., Inc.*, 2020 WL 2848232, at *5 ("[I]n determining how to exclude unnecessary hours, courts may apply a percentage discount to the overall fee award as a practical means of trimming fat from a fee application because a request for attorney's fees should not result in a second major litigation.").

In this case, Plaintiff's counsel requested reimbursement for 53 hours. Plaintiff's counsel appears to have incorporated the Court's direction to limit his request for compensation for work that fell within the scope of the Court-ordered sanction, namely, for work expended on the briefing of the sixth motion *in limine* and efforts to compel discovery. Plaintiff initially sought compensation for $77,366.50 in fees for work broadly devoted to "discovery matters" and "related to Plaintiff's

Motion for Summary Judgment." *See Viahart, LLC*, 2025 WL 638606, at *2. Now, Plaintiff seeks only $24,730.88 as a sanction, which represents a nearly $53,000 fee reduction because Plaintiff appropriately removed several time entries from his request that did not fall within the scope of the Court's sanction order.

However, the Court must reduce Plaintiff's request for several reasons. First, the matter could have been staffed more efficiently. Plaintiff changed counsel several times throughout the course of the litigation. Between 2020 and 2024, Plaintiff hired eight lawyers from four different law firms. Six of those lawyers were partners. While not all of the lawyers overlapped, the turnover in counsel appears to have required some duplication of effort for which the Court must account. *See Abdell*, 2015 WL 898974, at *5 ("In assessing the extent of staffing . . . appropriate for a given case, a district court must be accorded ample discretion.").

Next, although the Court's review of the records confirms that most of the 53 hours of work for which Plaintiff seeks compensation fall within the scope of the Court-ordered sanctions, other descriptions are too vague for the Court to audit fully. "[T]he vague nature of many of the entries throughout the records effectively prevents the Court, and Defendants, from independently assessing whether the time spent on each task was reasonable and necessary." *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 188 F. Supp. 3d 333, 344 (S.D.N.Y. 2016). For example, several entries refer to work performed on "motions *in limine*" without specifying which one. *See, e.g.*, Creedon Decl. at 26 ("Review and revise motion in limine.").

The problem associated with Plaintiff's use of imprecise descriptions is compounded by his use of block billing, which inhibited the Court's review of the contemporaneous records because the Court could not discern precisely how much time within each block-billed entry fell within the scope of the Court's sanction order. "Block billing refers to a single time entry that includes a variety of distinct tasks." *Ass'n of Holocaust Victims for Restitution of Artwork & Masterpieces*, 2005 WL 3099592,

at *5. "Block billing makes it difficult for the court to allocate time to individual activities in order to gauge the reasonableness of time expended on each activity." *Id.* "Block billing is 'not prohibited in this Circuit as long as the Court can determine the reasonableness of the work performed,' and 'billing descriptions that are fairly general, including terms such as "case preparation" or "meeting" may be sufficiently concrete, when viewed in context, to permit the court to make a judgment about the reasonableness of the total hours claimed.'" *Abdell v. City of New York*, 2015 WL 898974, at *4 (S.D.N.Y. Mar. 2, 2015) (Sullivan, J.) (quoting *Zimmerman v. Portfolio Recovery Assocs., LLC*, 2013 WL 6508813, at *11 (S.D.N.Y. Dec. 12, 2013)).

Here, of the forty-two entries for which Plaintiff seeks reimbursement, all but twelve were block billed. For example, on April 15, 2024, Mr. Cowart billed 6.4 hours for the following work: "*Attorney conference with M. Hart regarding revisions to joint pretrial materials and motion in limine;* revise Joint Pretrial Order, Verdict Form, Jury Instructions, Preliminary Instruction of Case, Preliminary Instruction of Law, and Joint Stipulations of Fact; attorney conference with M. Hart regarding new exhibits and questions for modifying preliminary instructions and jury instructions." Creedon Decl. at 25. The italicized text is highlighted in Plaintiff's submission, indicating that Plaintiff is seeking compensation for only that portion of the time billed. This is just one example of many. Because of the persistent use of block billing, the Court could not properly audit the entries to make a reasonableness determination about the precise number of hours expended on work that is the subject of the sanctions motion, as opposed to non-compensable matters.[5]

---

[5] To try to cure the block-billing, Mr. Creedon explained that he spoke with some of the billing attorneys or reviewed "the relevant filings," and case files to determine how much of each entry related to the relevant motions. Plaintiff cites no authority to support his approach of retroactively reviewing and, in effect, supplementing the contemporaneous timesheets. *Cf. Kottwitz v. Colvin*, 114 F. Supp. 3d 145, 151 (S.D.N.Y. 2015) (emphasis omitted) ("Counsel's efforts to cobble together a historical account of time expended based on work records is not only contrary to the legal standard, but proves to be inadequate as a factual matter."). Accordingly, "[h]owever unfair it would be to rule retroactively that plaintiffs' attorneys should have kept better records in the past," *Scott v. City of New York*, 626 F.3d 130, 133 (2d Cir. 2010), more precise record keeping in this case would have mitigated some of the issues presented here.

Accordingly, the Court reduces Plaintiff's fee request by ten percent. "Where counsel relies on vague / excessive entries or block billing practices which make it difficult for a court to assess reasonableness, an across-the-board fee reduction is warranted." *Anderson v. Cnty. of Suffolk*, 2016 WL 1444594, at *6 (E.D.N.Y. Apr. 11, 2016) (recognizing that where "counsel relies on vague entries and block billing, courts are unable to review hours for reasonableness" and noting that "[c]ourts have imposed reductions as high as 40% based solely on vague billing entries"); *see, e.g.*, *Div. 1181 Amalgamated Transit Union-New York Emps. Pension Fund v. D & A Bus Co., Inc.*, 270 F. Supp. 3d 593, 619–20 (E.D.N.Y. 2017) (applying a 10% across-the-board reduction in hours when there were "approximately 15 instances of block billing" because the "prevalence of these types of entries" impeded its ability to assess the reasonableness of the request) (collecting cases); *Caban v. Emp. Sec. Fund of the Elec. Prods. Indus. Pension Plan*, 2015 WL 7454601, at *8 (E.D.N.Y. Nov. 23, 2015) (33% reduction in overall hours spent due to block billing, vague entries, and excessive time spent on certain routine tasks); *Gagasoules v. MBF Leasing LLC*, 296 F.R.D. 107, 112 (E.D.N.Y. 2013) (40% reduction due to vague and unrelated entries); *Ritchie v. Gano*, 756 F. Supp. 2d 581, 583 (S.D.N.Y. 2010) (reducing attorneys' fee award by 40% and holding that "[i]n the instance where a court has directed parties to parse out records to clearly state how much time the attorneys spent on each claim, and the parties have done so insufficiently and have referred to an unrealistic volume of hours as 'inextricably intertwined' with many claims, the court may also decrease the requested award amount"); *DeVito v. Hempstead China Shop, Inc.*, 831 F. Supp. 1037, 1045 (E.D.N.Y. 1993) (reducing attorneys' fee request by 40% due to duplication of work, vague descriptions of some of the work performed and the necessity of the work). Consequently, to adjust for inefficiencies in staffing and a lack of precision across Plaintiff's counsel's bills, the Court reduces the request by ten percent.

That said, the Court does not conclude that a reduction of greater than ten percent is necessary. "Trial courts need not, and indeed should not, become green-eyeshade accountants. The

essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011). Here, not all entries are block billed, and Plaintiff's counsel already reduced his fee request for most entries by up to fifty percent based on his internal review of the records. Of the approximately forty entries for which Plaintiff's counsel seeks compensation, he only sought full compensation for about fifteen entries. Plaintiff's counsel in effect already reduced his request to account for the block billing. Here, a ten-percent reduction is reasonable.[6]

## IV. CONCLUSION

The Court awards Plaintiff $22,257.79 in attorneys' fees, which represents a ten percent reduction from the $24,730.88 award requested by Plaintiff. The Clerk of Court is directed to terminate the motion pending at Dkt. No. 302.

SO ORDERED.

Dated: October 1, 2025
New York, New York

_____
GREGORY H. WOODS
United States District Judge

---

[6] Defendant takes issue with Plaintiff's failure to submit affidavits from every attorney who worked on the case. However, Plaintiff's failure to do so is not fatal to the motion. While the Second Circuit requires "contemporaneous time records," the Circuit "did not state that each attorney must file a separate affidavit, and courts both within and without this circuit have not imposed such a requirement." *Catanzano v. Doar*, 378 F. Supp. 2d 309, 320–21 (W.D.N.Y. 2005) (citing *New York State Ass'n for Retarded Children, Inc.,* 711 F.2d at 1148)) (concluding that failing to provide individual affidavits from each of the seventeen additional attorneys who worked on the case was not necessary) (collecting cases); *see also Jordan v. United States Dep't of Justice,* 691 F.2d 514, 519 (D.C. Cir. 1982) (finding that a fee petition was adequately supported by lead attorney's affidavit, in which he attested to the number of attorney and student hours expended on the case, based on his examination of attorneys' time sheets and the case file). Here, Mr. Creedon submitted contemporaneous time records for each of the involved attorneys and attested to the accuracy of those time sheets. Creedon Decl. ¶ 8. The Court reviewed those contemporaneous records for each lawyer and audited the entries for which Plaintiff seeks compensation to ensure that the entries related to the sixth *motion in limine* and efforts to compel production of documents and reduced the fee request accordingly. Therefore, Plaintiff satisfied the Second Circuit's requirement of submitting contemporaneous time records for each lawyer.