UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VIAHART, LLC,<br><br>Plaintiff,<br><br>v.<br><br>CREATIVE KIDS ONLINE, LLC; CREATIVE KIDS FAR EAST, INC.; CREATIVE KIDS ENTERPRISES, LLC; and CK ONLINE, LLC,<br><br>Defendants. | Case No. 1:20-cv-09943-GHW |

**VIAHART'S OPPOSITION TO DEFENDANTS' MOTION**
**<u>TO ENFORCE SETTLEMENT AND IMPOSITION OF SANCTIONS</u>**

Plaintiff, Viahart, LLC ("Viahart") files this response in opposition to the motion to enforce an alleged settlement filed by Defendants on November 5, 2025 (Defendants' "Motion," Dkt. 326), and in response respectfully shows the Court the following:

## I. INTRODUCTION

On October 30, 2025, Solomon Rosengarten, counsel for Defendants, filed a letter motion requesting that the Court find an enforceable settlement agreement exists between the parties. Dkt. 322. The following day, October 31, 2025, the Court set the matter for hearing. Dkt. 323. At that hearing—and in a subsequent written order—the Court instructed Defendants that, should they proceed with such a motion, they must: (1) "address the threshold issue of whether a motion to enforce a settlement agreement is properly before this Court" and (2) ensure that the motion is "filed in a manner consistent with the Federal Rule of Civil Procedure 56 and Local Civil Rule 56.1." Dkt. 325. The Court also cautioned that "[t]he parties should not expect that the filing of

the motion will have any effect on the schedule of the trial scheduled to begin on Monday, November 17, 2025." Dkt. 325. Thereafter, on November 5, 2025, Defendants filed the Motion requesting that the Court enforce a settlement and impose sanctions against Viahart and its counsel personally, including awarding Defendants' attorney's fees for preparing the Motion. Dkt. 326.

Contrary to Defendants' assertions, there was never any agreed upon or enforceable settlement between the parties—there were discussions between the parties' respective attorneys regarding a proposed stipulated motion for entry of judgment as to Defendants' trademark infringement, but nothing more. On October 6, 2025, the Court entered its order awarding Viahart $22,257.79 in fees—which Defendants have yet to comply with. Dkt. 313. *After* this award was issued in Viahart's favor, Defendants, through counsel, sent an email to Viahart, through counsel, stating "[t]he terms you set forth are correct" [Dkt. 326-2]—referring to the proposed stipulated judgment the parties had discussed. At no point, however, was there ever any settlement—no documents were ever prepared, let alone signed by either party. In fact, the correspondence exchanged between the parties, which Defendants omit despite being material to the crux of Defendants' Motion, make it abundantly clear there is no, nor was there ever, any settlement. Most significantly, Defendants have concealed their ongoing refusal to comply with this Court's order awarding attorney's fees to Viahart (Dkt. 313), while disregarding Viahart's repeated and consistent demands that payment of those court-ordered fees be made *before* discussing settlement.

As shown by the evidence submitted with Viahart's opposition, which Defendants conveniently do not include as part of the Motion, the discussions between counsel were solely about agreeing on the basic terms of a proposed stipulated motion for entry of judgment to efficiently resolve the case prior to trial—again, no settlement terms were ever discussed or agreed upon. Notwithstanding the fact there never was any settlement, Defendants bring their Motion in

what appears to be a clear attempt to circumvent the Court's prior order awarding Viahart its fees, and to raise yet another last-minute issue on the eve of trial. As is clear from the record, at no point did the parties reach any settlement.

For the reasons set forth below, Defendants' Motion fails on every front. It neither establishes the existence of any enforceable agreement between the parties and it wholly ignores the controlling law. Defendants' request for sanctions against Viahart and its counsel is equally meritless. There was no settlement, no bad faith conduct, and no behavior even approaching the level that would justify sanctions. To the contrary, the record shows Viahart's consistent good-faith efforts to engage in settlement discussions—conditioned only on Defendants' compliance with the Court's prior fee award in Viahart's favor. Accordingly, Defendants' sanctions request should be denied outright.

Given the frivolous nature and timing of the Motion on the eve of trial, Viahart should be awarded its fees incurred in opposing it against both Defendants and Defendants' counsel.

## II. RELEVANT FACTUAL BACKGROUND

On September 3, 10, and 12, Viahart, through counsel, emailed Defendants, through counsel, inquiring whether Defendants intended to file another last-minute bankruptcy petition and requesting the professional courtesy of notice before Viahart made substantive travel and logistical arrangements for trial on November 17, 2025. Declaration of Charles Wallace ("Wallace Decl.") ¶ 4; **Exhibit A**. Following the September 12 email, Defendants' counsel called Viahart's counsel, and they discussed the possibility of efficiently resolving this case by filing a stipulated motion for entry of judgment in Viahart's favor. Wallace Decl. ¶ 5. Defendants' counsel stated that he would call Viahart's counsel back on September 15, 2025 to discuss the option in more detail, but never did so. Wallace Decl. ¶ 6. On October 1, the Court awarded Viahart $22,257.79 in attorney's fees

for Defendants' discovery abuses. Dkt. 313. The next day, on October 2, 2025, Viahart's counsel emailed Defendants' counsel again, inquiring whether Defendants would be interested in a stipulated motion for entry of judgment on the issue of Defendants' trademark infringement, and simultaneously demanding payment of the sanctions award and providing a link for payment. Wallace Decl. ¶ 7; **Exhibit B**. Defendants' counsel did not respond to this email. *Id*. That same day, Viahart's founder and President, Molson Hart also emailed Defendants' counsel, demanding payment of the sanctions award, providing a link for payment, and stating that, if the Defendants wished to settle the dispute, they must "provide an offer in writing." Wallace Decl. ¶ 8; **Exhibit C**. Viahart's counsel sent Defendants' counsel another email on October 3, 2025, again asking whether Defendants would be interested in a stipulated motion for entry of judgment, and once again simultaneously demanding payment of the sanctions award and providing a link for payment. Wallace Decl. ¶ 9; **Exhibit D**. Again, Defendants' counsel did not respond. *Id*.

On October 6, 2025, Viahart's counsel and Defendants' counsel spoke by phone, at which time they again discussed Defendants' outstanding obligation to pay the sanctions award and the possibility of filing a stipulated motion for entry of judgment. Wallace Decl. ¶ 10. Following that call, Viahart's counsel emailed Defendants' counsel to memorialize what the parties discussed concerning the proposed stipulated motion for entry of judgment. *Id*.; **Exhibit E**. In response—within minutes—Defendants' counsel replied, "The terms you set forth are correct." *Id*. That same day, having still received no response from Defendants' counsel, Mr. Hart sent two additional emails reiterating his position. Wallace Decl. ¶ 11; **Exhibit F**. In those emails, Mr. Hart stated: "If you want to resolve this through settlement, here is what I need: 1. Payment of the judgment. I need this show of good faith so I know I'm not wasting my time and money. 2. Start exchanging emails in writing about terms. It can be between me and you or me and your clients—it doesn't

matter. It just needs to be in good faith." *Id*. Again—no response from Defendants or Defendants' counsel. Wallace Decl. ¶ 11. When Viahart's counsel sought clarification regarding Defendants' counsel's October 6, 2025 email stating, "The terms you set forth are correct[,]" Defendants' counsel confirmed on October 17, 2025, that Defendants summarily "will stipulate to a motion for entry of judgment . . ." Wallace Decl. ¶ 12; **Exhibit E**.[1]

On October 21, 2025, Defendants' counsel inquired whether the proposed stipulated motion had been drafted. Wallace Decl. ¶ 14; **Exhibit G**. Viahart's counsel responded, once again demanding payment of the sanctions award. *Id*. Thereafter, Defendants sent a series of threatening emails, raising ethical complaints and sanctions against Viahart's counsel. Wallace Decl. ¶ 15; **Exhibit G**. At every stage, Viahart's counsel emphasized that the parties had been discussing only basic terms of a stipulated motion for entry of judgment—not a settlement agreement—that the sanctions award remained unpaid, and that prior requests for settlement terms had gone unanswered. Wallace Decl. ¶ 16; **Exhibit G**. Defendants' counsel then created a new email thread with the subject line "TERMS OF SETTLEMENT," attaching Viahart's counsel's October 6, 2025 email regarding the proposed stipulated motion—misleadingly implying that Viahart's counsel had authored the subject line, which Viahart's counsel did not. Wallace Decl. ¶ 17; **Exhibit H**. Rather than paying Viahart its awarded fees and thereafter attempting to discuss a settlement in good faith, Defendants chose to file the Motion.

## III. LEGAL STANDARD

[1] Without belaboring the point, the October 6, 2025 email in which Defendants' counsel stated that "the terms you set forth are correct" related solely to the hypothetical stipulated motion for judgment on Defendants' trademark infringement that the parties discussed and in no way was ever finalized, agreed to, nor amounted to a settlement agreement. Wallace Decl. ¶ 13. The timing and nature of Defendants' counsel's October 6, 2025 email—sent just five minutes after Viahart's counsel's email—illustrate Defendants' bad faith attempt to misconstrue Viahart's good-faith efforts to efficiently resolve the case prior to trial.

The Court made clear in the October 31, 2025 hearing, and in two subsequent written orders that briefing on Defendants' Motion must comply with Federal Rule of Civil Procedure 56. Dkts. 325, 327. Under Federal Rule of Civil Procedure 56, summary judgment is only appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating "the absence of a genuine issue of material fact[,]" and if that initial burden is satisfied, the burden then "shifts to the party resisting summary judgment to present evidence sufficient to satisfy every element of the claim." In determining whether there exists a genuine dispute as to a material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Mt. Hawley Ins. Co. v. Beach Cruiser, LLC*, 2025 U.S. Dist. LEXIS 40665, at *13 (S.D.N.Y. 2025) (citing *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012)). "The Court's job is not to 'weigh the evidence or resolve issues of fact.'" *Mt. Hawley Ins. Co.*, 2025 U.S. Dist. LEXIS 40665, at *13 (citing *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 254 (2d Cir. 2002)). "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citation omitted).

While Defendants' Motion is a motion to enforce "settlement" and not a motion for summary judgment, the same principles still apply—Defendants must submit evidence showing there are no disputed issues of material fact giving rise to the relief sought in its motion, and all ambiguities and factual inferences must be drawn in favor of Viahart. *Dirs. Guild of Am., Inc. v. CBS Broad., Inc.*, 2025 U.S. Dist. LEXIS 219211, at *6 (S.D.N.Y. 2025). Defendants have not met their burden.

## IV. LEGAL ARGUMENT

### A. No Settlement Agreement Exists Under the Applicable Standards

The Second Circuit and Southern District of New York have recognized two kinds of preliminary contracts under New York law. "The first (Type I) 'occurs when the parties have reached complete agreement (including the agreement to be bound) on all the issues perceived to require negotiation.'" *Murphy v. Inst. of Int'l Educ*., 32 F.4th 146, 150 (2d Cir. 2022) (citing *Teachers Insurance and Annuity Association of America v. Tribune Co*., 670 F. Supp. 491, 498 (S.D.N.Y. 1987). "The second (Type II) "'is one that expresses mutual commitment to a contract on agreed major terms, while recognizing the existence of open terms that remain to be negotiated.'" *Id*. Importantly, none of these factors apply here, as the record contains no indication that a settlement agreement was ever negotiated or even contemplated between counsel. Instead, Mr. Hart explicitly made clear by email that all settlement discussions were to proceed directly through him—and that Viahart is willing to discuss settlement if—and only if—Defendants comply with the fee award in Viahart's favor (Wallace Decl. ¶¶ 8, 11; **Exhibits C, F**), expressly undercutting Defendants' position that a settlement ever existed. In fact, the only discussions the parties had, through counsel, concerned only a proposed stipulated motion for entry of judgment on Defendants' trademark infringement—not a settlement agreement.

#### *i. No Settlement Agreement Exists Under the Winston Standard*

The Second Circuit in *Winston v. Mediafare Entm't Corp*., 777 F.2d 78, (2d Cir. 1985) initially articulated a four-part test to determine whether parties intended to be bound in the absence of a fully executed agreement:

> The court is to consider (1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing.

*Winston v. Mediafare Entm't Corp.*, 777 F.2d 78, 80 (2d Cir. 1985). Even assuming, *arguendo*, that the *Winston* factors are applicable to the instant factual record, none of those factors are satisfied. First, while there were discussions about a proposed stipulated motion for judgment on Defendants' trademark infringement, any such proposed stipulated motion was never reduced to writing, something both parties agreed was required. Wallace Decl. ¶¶ 5, 7-11, 14; **Exhibits B, D, E, G, H**. Second, neither party "partially performed"—nor was there anything to "partially perform" as the concept of the proposed stipulated motion was never reduced to writing and was certainly never entered into by either party. Wallace Decl. ¶ 18. Third, there was never an agreement—whatsoever—much less an agreement upon all terms. *Id*. And finally, even assuming there was a binding agreement as to the discussed stipulated motion, which there was not, any such motion would need to be in writing to be considered by the Court—which never occurred. In short, even though no settlement was ever discussed or agreed upon, every *Winston* factor nonetheless favors Viahart, and Defendants' Motion must be denied as a result.

*ii. No Settlement Agreement Exists Under the Arcadian Standard*

In *Arcadian Phosphates, Inc. v. Arcadian Corp*., 884 F.2d 69 (2d Cir. 1989), the Second Circuit adopted a modified additional test to determine the existence of Type II agreements, considering:

> whether the intent to be bound was revealed by (1) the language of the agreement; (2) the context of the negotiations; (3) the existence of open terms; (4) partial performance; and (5) the necessity of putting the agreement in final form, as indicated by the customary form of such transactions.

*Arcadian Phosphates, Inc. v. Arcadian Corp*., 884 F.2d 69, 72 (2d Cir. 1989). As with the above *Winston* factors, each of the *Arcadian* factors favor Viahart and against any finding that a settlement agreement exists. The language of the alleged "agreement" between the parties are Viahart's proposed terms of a stipulated motion for entry of judgment, and Defendants' response that "[t]he terms . . . set forth are correct"—nothing more. Wallace Decl. ¶¶ 10, 12, 13, 18; **Exhibit E**. This is not enforceable. Notably, the context of these discussions includes multiple demands for payment of the sanctions award, alongside Defendants' counsel's explicit confirmation that the conversations concerned "stipulat[ing] to a motion for entry of judgment[.] Wallace Decl. ¶ 12; **Exhibit E**. Very few terms of the proposed stipulated motion were ever addressed, leaving many terms unresolved; neither party "partially performed" the drafting of the motion; and, as required, a motion must be in writing to be considered by the Court. Thus, although no settlement was ever discussed or agreed upon, every *Arcadian* factor nonetheless also still favors Viahart, and Defendants' Motion must be denied.

*iii. There Was No Intent For The Parties To Be Bound*

The Second Circuit has held that, notwithstanding the *Winston* and *Arcadian* tests, "while these factors may be helpful, the ultimate issue, as always, is the intent of the parties: whether the parties intended to be bound, and if so, to what extent." *Murphy*, 32 F.4th at 151. Viahart and Viahart's counsel made clear to Defendants and Defendants' counsel in multiple communications that the parties were discussing only the terms of a potential stipulated motion for entry of judgment, and that payment of the sanctions award was always a prerequisite to discussing settlement. Wallace Decl. ¶¶ 5, 7-11, 14, 16, 19; **Exhibits B, C, D, F, G, H**.

Notwithstanding, Defendants now claim there was a settlement, when there was not, in a clear attempt to evade their obligations under the Court's order awarding Viahart's fees. But

Defendants' obligation to comply with the Court's sanctions order is entirely separate from any discussions concerning the proposed stipulated motion for judgment on Defendants' infringement that the parties had discussed, but had not been reduced writing nor signed by either party.

At no point did Viahart ever engage in any discussions with Defendants that could even remotely suggest that there was a settlement agreement, and even if there was—which again, there was not—that would suggest that such settlement satisfied Defendants' obligations under the fee award. Defendants' contention that these communications amount to an enforceable settlement, or otherwise excuse Defendants' compliance with this Court's order on Viahart's awarded fees, defies logic. Tellingly, only after noticing that Viahart's counsel's October 6, 2025 email made no reference to the sanctions award, which was sent after several other emails to Defendants' counsel demanding payment of the awarded fees, did Defendants' counsel, respond in a manner designed to mischaracterize the intent of the communication. Wallace Decl. ¶¶ 10, 12, 13; **Exhibit E**. This effort to twist the record is misleading, deceptive, and cannot withstand scrutiny. The record unmistakably shows that the parties were never negotiating a settlement agreement and any discussion regarding a proposed stipulated motion for entry of judgment was simply that—a discussion—and in any event was wholly separate from Defendants' obligation to pay the sanctions award. There was no meeting of the minds, and the parties simply never entered into any binding settlement agreement. Under the controlling *Murphy* standard, therefore, no settlement agreement exists, and Defendants' Motion is without merit.

### B. Genuine Disputed Issues of Material Fact as to Whether a Settlement Agreement Exists, Which Further Warrant the Court's Denial of Defendants' Motion

Even assuming the Court were to entertain Defendants' Motion, there is plainly a genuine issue of material fact in dispute as to whether a settlement agreement was ever reached. The record reflects a series of communications that at most concerned a proposed stipulated motion for entry

of judgment, not a binding settlement. On multiple occasions, Viahart made clear that payment of the Court-ordered sanctions award was a prerequisite to any resolution discussions and that all settlement negotiations must proceed directly through Viahart. Wallace Decl. ¶¶ 5, 7-11, 14, 16, 19; **Exhibits B, C, D, F, G, H**. At no point were any settlement terms finalized or agreed upon.

Defendants' own conduct highlights the disputed nature of the record. For example, Defendants' counsel attached Viahart's counsel's October 6, 2025 email to a new thread titled "TERMS OF SETTLEMENT" (Dkts 326-1, 326-2)—misleadingly implying that the parties had reached a binding agreement—a claim that Viahart's counsel never made. Wallace Decl. ¶ 17; **Exhibit H**. Similarly, Defendants' counsel's October 17 and October 21, 2025 emails selectively misconstrue prior discussions, attempting to transform exchanges regarding the proposed stipulated motion into evidence of a settlement. *See* Wallace Decl. ¶¶ 12, 13; **Exhibits E, H**. These discrepancies in the parties' communications—combined with repeated demands by Viahart for payment of the sanctions award before any willingness to even engage in settlement discussions and the clear absence of any written agreement signed by either party—demonstrate that a reasonable factfinder could conclude that no meeting of the minds ever occurred.

Because these facts are wholly contested, granting of Defendants' Motion would be improper. At a minimum, they establish that a genuine issue of material fact exists as to whether any settlement agreement was ever reached. Accordingly, Defendants' Motion cannot be granted and must be denied.

## V. CONCLUSION

For the foregoing reasons, Viahart respectfully requests that the Court find Defendants' Motion to be without merit and deny it in its entirety, including the request for any sanctions against Viahart and its counsel personally.

Dated: November 12, 2025

**SCALE LLP**

By: */s/ Charles A. Wallace*
Jamie D. Wells (admitted pro hac vice)
California Bar No. 290827
Charles A. Wallace (admitted pro hac vice)
Texas Bar No. 24110501
Sabina Schiller (admitted pro hac vice)
DC Bar No. 90031612
548 Market Street, Suite 86147
San Francisco, CA 94104
Tel. (415) 735-5933
Fax. (415) 573-0983
jamie.wells@scalefirm.com
cwallace@scalefirm.com
sschiller@scalefirm.com

COUNSEL FOR PLAINTIFF
VIAHART LLC

## CERTIFICATE OF COMPLIANCE WITH LOCAL CIVIL RULE 7.1

I certify that this document complies with the word-count limitation set forth in Local Civil Rule 7.1(c) and that the total word count of the foregoing document is 3,402.

By: */s/ Charles A. Wallace*
Charles A. Wallace

## CERTIFICATE OF SERVICE

I certify that, on November 12, 2025, the foregoing document has been filed with the Clerk via the Court's CM/ECF system and served on all counsel of record who are deemed to have consented to electronic service via the Court's NEF system or the registered users' email accounts per Rule 5(b) and LR 5.2.

By: */s/ Charles A. Wallace*
Charles A. Wallace